**UNITED STATES, Appellee,**

v.

**Corporal Raymond M.L. COLLINS, 301–58–3773, United States Army, Appellant.**

**ARMY 9201680.**

U.S. Army Court of Criminal Appeals.

26 Nov. 1996.

tain John W. O'Brien, JA; Captain Chris A. Wendelbo, JA (on brief).

Before CAIRNS, TOOMEY, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT ON REMAND

CAIRNS, Senior Judge:

A special court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of indecent acts with another in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1988)[hereinafter UCMJ]. The court-martial sentenced appellant to a bad-conduct discharge, confinement for six months, forfeiture of $523.00 pay per month for six months, and reduction to Private E1. The convening authority exercised his clemency powers by approving only so much of the sentence as provided for a bad-conduct discharge, confinement for three months, and reduction to Private E1.

This court previously affirmed the findings and sentence in a short-form memorandum opinion.[1] Subsequently, the Court of Military Appeals (now the Court of Appeals for the Armed Forces) set aside our decision, concluding that appellant had been held in post-trial confinement beyond his release date. When this court first considered this case, the issue of illegal post-trial confinement was neither raised by appellant nor discernible from the record.[2] Because the issue had not been raised before this court, the Court of Military Appeals remanded the case for us: (1) to determine as a matter of fact what appellant's release date was; and, (2) "to consider 'whether any sentence relief is required in order to purge the effects' of this confinement. *United States v. Walker,* 23 M.J. 429 (C.M.A.1987); *see United States v. Keith,* 36 M.J. 518 (A.C.M.R.1992)." *United States v. Collins,* 43 M.J. 370, 371 (1995).

For Appellant: Lieutenant Colonel John T. Rucker, JA; Captain Michael E. Hatch, JA (on brief).

For Appellee: Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Cap-

---

1. *United States v. Collins,* ACMR 9201680 (A.C.M.R. 18 October 1993) (unpub.).

2. The assignments of error before the court at that time involved the military judge's instruction on reasonable doubt and the constitutionality of the appointment of military judges. The court also considered matters personally raised by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982). Those issues, having been once resolved, will not be reexamined.

On remand, we specified the following issue:

WHAT RELIEF, IF ANY, SHOULD BE AFFORDED APPELLANT FOR HAVING BEEN HELD IN POST-TRIAL CONFINEMENT BEYOND HIS RELEASE DATE.

## FACTS

### A. Appellant's Misconduct

The facts of appellant's misconduct, while bizarre and perverted, are uncomplicated. The appellant was a regular customer of the Phone Center, an on-post service provided for the convenience of soldiers and family members to make and pay for long distance telephone calls from one of the facility's sixteen booths. Customers pay the attendant who has a computerized record of their long distance charges.

After making a phone call one evening, the appellant engaged in casual conversation with Ms. B, the only attendant on duty and a person the appellant knew solely by virtue of his frequent patronage of the Phone Center. While the two were talking, an off-duty co-worker called Ms. B on the telephone, and the three engaged in a conversation, with Ms. B acting as intermediary. During the course of this confab, Ms. B, who was seated behind a counter, looked up at the appellant and observed him masturbating. Feeling scared and sick to her stomach, Ms. B did not immediately protest, but waited until the appellant departed before she reported the incident. At that time, she noticed ejaculate on her work-station counter.

### B. Case Processing

Based upon the entire record, including the post-trial stipulation[3] of the parties, we make the following findings of fact relative to the post-trial processing of this case. *See*

Article 66, UCMJ. The appellant was confined on 7 August 1992, the day the court-martial adjudged a sentence that included confinement for six months. Based on the six-month term of confinement, the appellant's minimum release date, the calculation of which includes credit for good conduct,[4] was 7 January 1993.

On 26 October 1992, the convening authority took his action and granted clemency by disapproving all forfeitures and approving confinement for only three months. Based on the approved three-month sentence to confinement, and deducting credit for good conduct time and extra good conduct time earned, the appellant's minimum release date became 21 October 1992, five days preceding the date of the convening authority's action.

On 17 November 1992, the staff judge advocate transmitted by facsimile the promulgating order reflecting the convening authority's clemency action to the Fort Knox Correctional Facility, the place of appellant's confinement. Prior to 17 November 1992, the staff judge advocate had not otherwise informed the Correctional Facility of the convening authority's clemency action. The Fort Knox facility released appellant from confinement upon the receipt of the promulgating order on 17 November 1992.

## DISCUSSION

### A. Remanded Issues

■ In response to the first issue contained in the remand order from our superior court, we find that the appellant's release date should have been 26 October 1992, the day the convening authority took his action. Although the record reveals no malfeasance, we conclude that appellant served twenty-two days beyond his release date as a result of negligent processing by the responsible staff judge advocate.

3. Prior to remand, the Court of Military Appeals ordered counsel for both sides to file a stipulation regarding certain facts surrounding the post-trial processing of this case. *United States v. Collins*, 41 M.J. 115 (C.M.A.1994).

4. Army Reg. 633–30, Apprehension and Confinement, Military Sentences to Confinement, para. 13 (28 March 1989)[hereinafter AR 633–30], prescribes procedures for the computation of sentences of Army and Air Force personnel sentenced to confinement. In accordance with AR 633–30, para. 13, a tentative minimum release date is computed by deducting from the maximum release date the total good time allowance prescribed by the regulation. The minimum release date is the date on which a confinee must be released so long as he/she remains entitled to the normal administrative credit for good time.

The remaining issue remanded to us is whether any sentence relief is required to purge the effects of the twenty-two days of unlawful confinement, and if so, what kind and amount of relief.

### B. Law

When the record reveals that an accused has been improperly held in post-trial confinement beyond his release date, this court may fashion an appropriate and meaningful remedy. *United States v. Keith*, 36 M.J. 518 (A.C.M.R.1992). Bearing in mind that meaningful relief must also be appropriate, courts have fashioned remedies in such cases by balancing the relief sought against the nature and magnitude of the illegal post-trial confinement. *United States v. Valead*, 32 M.J. 122 (C.M.A.1991); *Keith*, 36 M.J. at 520; *United States v. Presto*, 17 M.J. 1105 (A.C.M.R.1984), *rev'd on other grounds*, 24 M.J. 350 (C.M.A.1987); *see also*, *United States v. Suzuki*, 14 M.J. 491 (C.M.A. 1983). Not only should the remedy be proportional to the error, but the resulting sentence must be appropriate under Article 66(c), UCMJ. Even error of Constitutional dimension does not necessarily require disapproval of a punitive discharge when no other meaningful sentence relief is possible. *Valead*, 32 M.J. at 123. Providing relief that is totally disproportionate to the harm suffered, or that grants the appellant a major windfall, is neither required nor appropriate. *Valead*, 32 M.J. at 128 (Everett, S.J., concurring in the result).

### C. Analysis

As appellant points out, since all confinement has been served—and the approved sentence did not include forfeitures—the only remaining meaningful relief would be to dis-

approve the bad-conduct discharge. We decline to grant this relief requested by appellant because disapproval of the bad-conduct discharge would be totally disproportionate to the harm suffered, would provide the appellant a major windfall, and would be too drastic a remedy in light of the seriousness of appellant's misconduct.

Although we recognize that the loss of twenty-two days of liberty is serious harm, we must acknowledge that appellant suffered the harm as a result of negligent failure to recognize the effect of clemency on appellant's release date. The harm did not result from any bad faith or intentional desire to punish the appellant. Within this context, we conclude that the proposed remedy of disapproval of the bad-conduct discharge is totally disproportionate to twenty-two days of unlawful confinement. A bad-conduct discharge is far more severe than twenty-two days of confinement. It has been considered under certain circumstances to be more serious than twenty-four months confinement. *United States v. Carter*, 45 M.J. 168 (C.M.A. 1996).[5] Moreover, a bad-conduct discharge is a permanent record with life-long adverse implications.[6] In weighing the severity of the harm suffered by appellant, we find that the twenty-two days of improper restraint, during which appellant was entitled to pay, was relatively short and certainly more transient in nature than a punitive discharge. Accordingly, disapproval of the bad-conduct discharge would not be proportional to twenty-two days of unlawful confinement.

Ironically, the appellant was held beyond his release date as a direct result of the convening authority's decision to grant clem-

---

**5.** A bad-conduct discharge has also been equated to six months of confinement for some purposes. *Valead*, 32 M.J. at 128 (Everett, S.J., concurring in the result); *see United States v. Brown*, 13 U.S.C.M.A. 333, 32 C.M.R. 333, 1962 WL 4497 (1962).

**6.** During sentencing instructions, military judges advise members how serious bad-conduct discharges are viewed:

[T]he ineradicable stigma of a punitive discharge is commonly recognized by our society. A punitive discharge will place limitations on employment opportunities and will deny the

accused other advantages which are enjoyed by one whose discharge characterization indicates he/she has served honorably.... [A bad conduct discharge] ... deprives one of substantially all benefits administered by the Department of Veterans Affairs and the Army establishment.... A bad conduct discharge is a severe punishment and may be adjudged for one who in the discretion of the court warrants severe punishment for bad conduct.... Dep't of Army, Pam. 27–9, Military Judges' Benchbook, sec. VI, 97–98 (30 Sep. 1996).

ency. The convening authority's action caused appellant's release date, when adjusted for good conduct time, to predate the convening authority's action. This anomaly, compounded by the staff judge advocate's failure to appreciate the effect of the good time rules and to advise the confinement facility in a timely manner of the convening authority's action, resulted in the improper post-trial restraint. Had the convening authority not granted clemency, the appellant would not have been harmed. We conclude that particularly under these circumstances, disapproval of the bad-conduct discharge would provide appellant a major windfall, certainly well beyond the intended clemency. *See Valead,* 32 M.J. at 125 and 32 M.J. at 128 (Everett, S.J., concurring in the result).

Evaluating the nature of the harm and the proportionality of the remedy within the context of the seriousness of appellant's misconduct, we conclude that disapproving the bad-conduct discharge would be too drastic. The appellant's transgressions most assuredly merited a bad-conduct discharge. It is unnecessary to recount all the sordid details of appellant's misconduct and their significant impact on the victim. Weighing all the circumstances, we are convinced that disapproving the bad-conduct discharge would be a grossly disproportionate remedy and would fail to vindicate society's interests.

### D. Remedy

As summarized in *Keith,* most cases dealing with excessive post-trial confinement have focused on forfeitures to provide relief. *Keith,* 36 M.J. at 519; *but see United States v. Hilt,* 18 M.J. 604 (A.F.C.M.R.1984). In the case at bar, the convening authority disapproved the forfeitures as a matter in clemency.

 Our task in fashioning a remedy in this case differs from reassessing the sentence for error committed at trial. *See United States v. Sales,* 22 M.J. 305 (C.M.A.1986). For trial errors, our focus necessarily is on the impact of the error on the originally adjudged sentence. For post-trial errors such as this, our effort is more akin to ensuring equity. As it stands now, this court cannot give the appellant any "meaningful relief"—in the sense of giving or returning to him a portion of the sentence—other than disapproval of the bad-conduct discharge. We have concluded, however, that such relief is inappropriate. Instead, we will grant the only appropriate relief that remains—we will disapprove the adjudged confinement that has already been served. This is a remedy almost identical to the one fashioned by the Navy–Marine Corps Court of Military Review in *Valead,*[7] as affirmed by the Court of Military Appeals.[8]

Our earlier decision affirming the findings of guilty remains in effect. Re-assessing the sentence on the basis of the error noted and the entire record, the court affirms only so much of the sentence as provides for a bad-conduct discharge and reduction to Private E1.

Judge TOOMEY and Judge RUSSELL concur.

---

7. *United States v. Valead,* 30 M.J. 634, 639 (N.M.C.M.R.1990), *aff'd,* 32 M.J. 122 (C.M.A. 1991).

8. We believe our legal conclusions are in accord with this court's decision in *United States v. Keith,* 36 M.J. 518. To the extent *Keith* may suggest that an appellant who is improperly held in post-trial confinement is "entitled to meaningful relief," even if inappropriate, it is only dicta which we decline to follow. *Keith,* 36 M.J. at 519. Instead, we will follow the reasoning adopted by the Court of Military Appeals in *Valead,* 32 M.J. 122.