Charles L. YOUNG, Petitioner,

v.

Marvin L. NICKELS, Respondent.

No. 97–3420–RDR.

United States District Court,
D. Kansas.

July 8, 1999.

**1138**

Charles L Young, USDB–FT Leavenworth, Fort Leavenworth, KS, petitioner pro se.

Mary K. Ramirez, Office of United States Attorney, Topeka, KS, for Marvin L Nickels, Commandant respondent.

### *MEMORANDUM AND ORDER*

ROGERS, District Judge.

This is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by an inmate of the United States Disciplinary Barracks, Fort Leavenworth, Kansas. In general, petitioner claims that military prison authorities "misapplied" regulations governing good time credits in calculating the time he must serve following violation of parole, and have "illegally held" him "beyond his minimum release date." He asserts that his punishment has been increased as a consequence in violation of the Due Process and Double Jeopardy Clauses of the United States Constitution. An order to show cause issued, respondent filed an Answer and Return, petitioner filed a Traverse, respondent filed a reply to the Traverse, and petitioner filed a "sur-reply" to respondent's reply. Having examined all the pleadings together with attachments, the court makes the following findings and order.

**FACTS**

The material facts are not in dispute. Young was convicted by court-martial of various crimes including rape and robbery, and was sentenced on February 19, 1971. His sentence to confinement, after two grants of clemency, stands at 20 years and 6 months. Young was first released on parole on March 4, 1980. Several years later, Young was convicted by the State of Maryland for cocaine possession with intent to distribute, and smuggling, and he was confined by that State. On January 26, 1988, the Air Force Clemency and Parole Board (AFCPB), pursuant to a parole revocation hearing, revoked Young's parole. On April 25, 1989, the AFCPB also determined that Young should receive no credit for street time. Petitioner was returned to military confinement on June 28, 1990.

Young was again paroled in October, 1991. On December 6, 1991, his parole was suspended for violating conditions of parole including testing positive for cocaine by urinalysis on several occasions during October and November, 1991. He was returned to military control on January 15, 1992. The AFCPB revoked parole and determined that no street time credit should be granted.

On September 5, 1995, Young was paroled for a third time. In June, 1996, parole was revoked because he tested positive for cocaine on multiple occasions in February, March and April, 1996. Young was returned to military confinement on April 25, 1996. The AFCPB granted credit for street time from September 5, 1995 to February 1, 1996. Petitioner does not challenge the revocations of his parole.

Upon petitioner's last return to military confinement, he had been given sentence credit for approximately 14 years and 9 months, leaving a balance of about 5 years and 9 months. He began serving this

balance when his confinement recommenced on April 24, 1996. His current full term expiration date is in February, 2002.

An inmate's minimum and maximum release dates are calculated upon confinement at the USDB, based on the length of sentence and applicable rates of good time credit. The manner in which such credits are earned, forfeited and accumulated by individual inmates is governed by regulations adopted by the Department of Defense and the Secretaries of the Army and Air Force.

## CLAIMS

■ In his original application, petitioner claimed that respondent "misapplied" the Department of Defense Instruction 1325.4 Treatment of Military Prisoners and Administration of Military Correction Facilities (October 7, 1968) (hereinafter 1968 Instr.). In his Traverse, petitioner altered his claim to acknowledge that respondent applied the DoD Directive 1325.4 Confinement of Military Prisoners and Administration of Military Correctional Programs and Facilities (May 19, 1988) (hereinafter 1988 Dir.), but contends the 1968 Instr. should have been applied because it was in effect when his offenses occurred in 1970.

In general, Young complains that the 1988 change to DoD Dir. 1325.4 operated to increase the duration of his sentence. He also maintains that the misconduct resulting in his parole revocations occurred subsequent to his minimum release date[1], which he contends is the date his parole period should have ended.

## DISCUSSION

This case is complicated by two factors. First and foremost, the military regulations governing parole and good time for prisoners at the USDB are difficult to locate and decipher. Piecemeal changes have been made numerous times; some are Department of Defense directives while others are Army and Air Force regulations. Some contain disorganized provisions on the same subject, some are poorly written with seeming inconsistencies, and some subjects seem not to be adequately addressed. These regulations are not in the Code of Federal Regulations or available to the court through normal research channels. Instead, the court must rely on excerpts selected by the parties and provided with pleadings.

The second complicating factor is petitioner's understandable failure to clearly state his claim. The court has refined petitioner's claim by liberally reading his pro se pleadings and attachments. The court construes petitioner's claim as alleging a violation of the Ex Post Facto Clause of the United States Constitution by respondent applying regulations governing parole and abatements more onerous than ones in effect at the time petitioner committed his offenses.

Petitioner asserts that the 1988 Dir. is significantly different from and more onerous than the 1968 Instr. Under the 1968 version of 1324.5, an inmate forfeited all accumulated good time credits upon the revocation of parole. Under the 1988 version, an inmate waives these credits upon accepting parole. Young claims that by applying the 1988 Dir., respondent "prematurely forfeited" his good time credits, and that had respondent applied the 1968 Instr., good time credits could not have been forfeited until years later. Petitioner claims that he was entitled to retain all good time credits up to revocation, and that with those good time credits his sentence should have expired in April, 1983. Petitioner's parole was first revoked in April, 1987. Thus, he contends respondent had no authority to confine him or to revoke parole after April, 1983.

The general claim that waiver of good time credits upon parole is more onerous than forfeiture at revocation has been rejected by this court and the Tenth Circuit

---

1. Minimum release date is defined in AR 633–30/AFR 125–30 para. 2f. as "The maximum release date reduced by the actual number of days of abatement credited on the sentence and further adjusted by forfeitures of abatement, where applicable".

Court of Appeals. *Foster v. Tillery*, 996 F.Supp. 1316 (D.Kan.1998); *Jefferson v. Hart*, No. 91–3232–RDR, 1993 WL 302137 at *4 (D.Kan. July 29, 1993), *aff'd*, 84 F.3d 1314 (10th Cir.) (unpublished), *cert. denied*, 519 U.S. 903, 117 S.Ct. 258, 136 L.Ed.2d 183 (1996); *Young v. Lowe*, No. 94–3067–RDR (D.Kan. Oct. 15, 1995), *aff'd*, 86 F.3d 1167, 1996 WL 276186 (10th Cir.) (unpublished), *cert denied*, 519 U.S. 942, 117 S.Ct. 328, 136 L.Ed.2d 242 (1996); *Jones v. United States Clemency and Parole Board*, No. 96–3275 (D.Kan. Jan. 6, 1997) (unpublished).[2] If this was all that Young was claiming, this action would be dismissed based upon the cited authority alone.

However, Young is alleging an additional circumstance which he contends renders the current waiver provision more onerous than the former forfeiture provision. This major premise of petitioner's claim is that his sentence expired on his minimum release date. In support of this premise, petitioner exhibits a copy of Army Regulation 633–30/Air Force Regulation 125–30 (Nov. 6, 1964) (hereinafter AR 633–30) attached to his Brief in Support of Petition (Doc. 2). Page 1 is entitled "Changes in Force: C 4" (June 15, 1971). It provides that the regulation is changed as follows:

> *Page 4. Paragraph 4.* Subparagraph *g* was added as follows by C 3, 22 June 1970.

> *g. Release of prisoners.* A prisoner shall be released at the expiration of his sentence to confinement, less the time deducted for good conduct (and, if applicable, extra good time).....

Respondent implies that no regulation provides for release of a parolee on the minimum release date, and has not exhibited C 3 or C 4 or any subsequent version of AR 633–30[3] which contains a paragraph "*g*".

Petitioner cites other paragraphs of AR 633–30 which he interprets as supporting his premise. He relies upon para. 6b(3) of AR 633–30 which provides: "All extra good time earned while serving a sentence to confinement will reduce the period of time to be spent in confinement under that sentence on an actual day basis ...;" and paragraph 14a "Method of Computation" which provides that "all abatement time reduces the maximum release date on an actual day basis [4]...." Also cited is paragraph 7a(8) which provides: "Sentences which have expired with allowance for abatement may not be revived for the purpose of forfeiting abatements earned thereon."

Petitioner additionally cites dicta from footnote 4 in *United States v. Collins*, 44 M.J. 830, 832 (Army Ct.Crim.App.1996) which provides: "The minimum release date is the date on which a confinee must be released so long as he/she remains entitled to the normal administrative credit for good time." Petitioner further cites language from *United States v. Rivera–Rivera*, 19 M.J. 971, 973 (ACMR 1985): "[A] prisoner's right to good conduct time does not vest until he reaches his minimum release date without violating the rules of the institution or committing any offense," and argues that it implies that good time does vest.

Respondent does not specifically address the language in C 3 and AR 633–30 relied upon by petitioner. Instead, respondent cites as justification for sentence computation in Young's case current regulations, e.g., AFR 125–23 (Nov. 17, 1976). It is settled that Young is entitled to application of regulations in effect at the time he committed his offenses if current regulations increase his punishment.

---

**2.** Copies of the cited, unpublished opinions are attached to respondent's Answer and Return (Doc. 8, Attach.E) and will not be duplicated to attach to this opinion.

**3.** It is assumed that respondent received a copy of petitioner's brief and this attachment.

**4.** The court notes that the 1988 Dir. cited by respondent also contains language in section I.1.a(1) that the inmate "shall" be credited monthly "with a deduction from the term of sentence."

From the foregoing discussion, it is clear that petitioner's claim involves not only retrospective changes in Directive 1325.4. Young is also complaining that respondent is not following AR 633–30[5] which he interprets as requiring that good time credit reduces the maximum release date and that inmates shall be released on their minimum release date.

In the first place, the court believes that Young is misinterpreting the cited regulations. The language in AR 633–30 is found within the context of calculation of good time credit and is not shown to mandate an actual change in a Full Term Expiration Date (FTD). The court is convinced that it merely indicates that good time is calculated with reference to the FTD.

In fact, other regulations provide that the FTD remains unchanged unless a parole term is shortened by prison officials, or service of the sentence is interrupted by inoperative time, such as a violated parole term. For example, under Air Force regulations on parole, parole terminates at the parolee's FTD: "A prisoner on parole remains in the legal custody and control of the Commandant until the full term or aggregated terms of his sentence expire . . . without credit for abatement." AF Reg. 125–23 (Nov. 17, 1976). DoD Instruction 1325.4 (October 7, 1968), Section III.O.2.c provides that "[a]ll good conduct and extra good time which has been earned up to the date of a prisoner's return as parole or probation violator, will be forfeited effective with the revocation of parole or probation."

█ Moreover, even if this court were to find that respondent is refusing to follow a military regulation, without a showing of something more, such as a denial of equal protection, no constitutional violation is presented. An agency's failure to follow its own regulation, standing alone, is not a violation of federal due process or double jeopardy.

The court does not deny the ambiguity created by this hodgepodge of regulations and is not convinced by respondent's pleadings and attachments that no ambiguity exists. However, Young has failed to convince this court that it was either the clearly written policy or the practice of respondent, either currently or formerly, to treat sentences as expired on the minimum release date or to actually decrease the sentence expiration date by good time credits. The burden is on petitioner to show his entitlement to federal habeas corpus relief[6].

Petitioner's best support for his premise is paragraph "g" which, standing alone, literally provides that "a prisoner shall be released" at expiration of his sentence less good time. That, as earlier noted, is the definition of minimum release date. Respondent seems to be ignorant that this change to AR 633–30 even exists, and its applicability to petitioner is not clearly established.

More importantly, even if this change were effective and applicable to Young, it conflicts with the provision requiring that a parolee is subject to supervision until his full term expiration date. Moreover, the 1968 Instr. does not fix the Minimum Release Date as the terminus for parole. Paragraphs III.O and III.P of the 1968 Instr. address, respectively, the earning and forfeiture of good time and parole. Paragraph III.Q addresses sentence operation, including the computation of sentences. None of these sections specifically

5. With respect to "g" and other paragraphs in AR 633–30, petitioner is not contending that these provisions were changed to his detriment, but only that the agency is not adhering to them.

6. Respondent's pleadings do not contain all the regulations governing parole and good time for inmates at the USDB or address the

provisions in AR 633–30/125–30 relied upon by petitioner. Consequently, the court contemplated requiring that the record be expanded. Instead, the court has carefully considered petitioner's arguments and scrutinized the exhibits produced by both parties and determined that petitioner fails to prove that a military parolee is entitled to release on his minimum release date.

addresses the issue of when parole ends. Contrary to petitioner's assertions, the Minimum Release Date does not constitute the termination date of parole under the old DoD. Under either the old rules or the new, petitioner's parole would have run to his Full Term Release Date, and would not have expired at his Minimum Release Date. The misconduct that resulted in revocation of his parole occurred well prior to his FTD.

Furthermore, paragraph "g" is not inconsistent with respondent's position that persons who remain confinees or "prisoners" are released on their minimum release date while parolees are not. As best as can be discerned by this court, the practice at the USDB has been to release inmates on their minimum release date only if they have a clear conduct record and have not been paroled. Once an inmate accepts parole, however, his minimum release date has no further effect. The original minimum release date has no relevance during the parole term. It also appears that an inmate who reaches his minimum release date without ever having been released on parole is unconditionally released. Thus, in practice, an inmate accepting parole has effectively waived the benefit of his good time under former and current regulations.

In the only military court case found precisely on this issue, the United States Army Court of Criminal Appeals rejected the position asserted by petitioner, *Johnson v. Army Clemency & Parole Board*, Army Misc. 9701522 (Nov. 12, 1997) (unpublished) (attached). In *Johnson*, the court held that the good-time waiver provisions of the 1988 DoD Dir. 1325.4 did not unlawfully increase petitioner's punishment, because under either the 1968 or 1988 version, a military prisoner's parole was not scheduled to end until his full term release date. The military court explained that when Johnson was first released on parole, his term of parole extended until

his "maximum release date, in accordance with" the 1988 Dir., and that

> The maximum release date is defined as the day preceding the date determined by adding the full term of the sentence to the beginning date of the sentence. The "full term of the sentence" is defined as the entire sentence to confinement without deductions for abatement. Abatement includes good conduct time and extra good time earned. Army Reg. 633–30 AF Reg. 125–30, Apprehensions and Confinement: Military Sentences to Confinement, para 2e (Nov. 6, 1974).

Johnson asserted that his parole term should have ended on his minimum release date and cited the 1968 version of DOD Dir. 1325.4 as authority for this assertion. After his minimum release date, but before his maximum release date, Johnson had violated his parole[7]. The court observed that this misconduct provided the basis for his return to the U.S. Disciplinary Barracks to serve the remainder of his sentence to confinement. The court further explained:

> The problem with petitioner's claim is that the 1968 instruction does not address the duration of parole. At the time of petitioner's offenses, however, Army Reg. 190–47, Military Police: The United States Army Correctional System, para. 12–27 (1 Oct. 1978) ... addressed the duration of parole and provided that 'if ... the parolee complies with the conditions of parole, the parolee will be discharged from supervision when the full term of the sentence is completed.'

> \*    \*    \*    \*    \*    \*

> Petitioner was not subjected to a retroactive law that caused more onerous punishment than authorized under the law at the time of his offenses.

---

**7.** In this case, revocation also occurred after Young's minimum release date, but before his maximum release date.

As in *Johnson,* Young's reasoning and conclusion are in error because they are premised upon an incorrect perception of how parole operated under the older DoD regulations.

The paragraph of AR 190–47 relied upon by the military court has been expressly incorporated into Air Force regulations as Attachment 1, Para. 12–27 to AFR 125–23 (Nov. 17, 1976). Moreover, regulations state that the Army operates the USDB at Leavenworth, and AR 190–47 substantially applies to Air Force inmates confined there.

The Tenth Circuit Court of Appeals recently considered a claim similar to Young's but under U.S. Parole Commission regulations governing good time credits earned pre-parole in *Patterson v. Knowles,* 162 F.3d 574 (10th Cir.1998). The petitioner in *Patterson* argued that the Commission's regulation providing that good time credit earned prior to parole had no effect after revocation, 28 C.F.R. 2.35(b), conflicted with the statutory scheme for good time credits. The statute, like paragraph "g," provides that "a prisoner shall be released at the expiration of his term of sentence less the time deducted for good conduct." 18 U.S.C. § 4163.

The Tenth Circuit recalled that prior to the issuance of § 2.35(b), it had upheld the forfeiture of good time credit after the revocation of parole in *McKinney v. Taylor,* 358 F.2d 689, 690 (10th Cir.1966). In *McKinney,* the petitioner had urged that he was still entitled to accumulated good time credits even though his parole had been revoked. *Id.* at 689. The Tenth Circuit rejected his argument, noting that "good time does not reduce the period of the original sentence but 'instead determines how much of the sentence must be spent within the confines of the prison.'" *Patterson,* 162 F.3d at 575, *citing McKinney,* 358 F.2d at 690. The Tenth Circuit concluded that the parole commission was "free to 'recommit a parole violator to prison for a length of time the same as the unexpired term' without taking into account good time credit earned prior to parole release." *Id.* The court stated: "Upon Petitioner's release, the good time he earned simply expired; therefore, the good time could have no effect on his subsequent parole violator term." *Patterson,* 162 F.3d at 575. The court also noted that four other circuits considered whether § 2.35(b) conflicts with the statute and concluded that it does not. It cited *Booth v. United States,* 996 F.2d 1171, 1172 (11th Cir.1993) holding that good time credits are 'used up' upon release from parole and unavailable to reduce the term received for parole violation; and *Boniface v. Carlson,* 881 F.2d 669, 671 (9th Cir.1989) holding that good time credits do not survive release upon parole and cannot be credited toward a parole violator's sentence. Finally, the court reasoned that § 2.35(b) is based on a "permissible construction" of the good time statutes. *Patterson* 162 F.3d at 576.

Civilian courts have long held that good time credit is not shown to advance the full term expiration date. In *Jones v. Moseley,* 319 F.Supp. 455 (D.Kan.1970), this court cited another court's reasoning as to civilian parole:

The privilege granted to a prisoner whereby he is conditionally released from prison in no way affects the legal length of his term of commitment to custody.... For misconduct while conditionally released ... he is subject to being retaken into custody ... having his previously earned good time forfeited, and being required to recommence service of his sentence at a point where this had been left off when he was conditionally released.

*Citing Williams v. Ciccone,* 293 F.Supp. 271 (W.D.Mo.1968), *aff'd,* 415 F.2d 331 (8th Cir.1969).

█ Thus, even though the regulations may be subject to more than one interpretation, military as well as civilian prison officials have not interpreted them the same as Young. Minimum release date is not shown to have ever been the date of

the expiration of a military parolee's sentence. Minimum release date is the date that an inmate must be released from *confinement* if he has not violated the rules of the institution. It has been the military's policy that parole does not expire until the full term of the sentence has been served either by confinement or conditional release credited as street time. It also has long been accepted policy that a violation of parole can result in revocation, a denial of street time credit, and confinement for the remainder of the full term calculated from the date of release on parole. This interpretation of its regulations by the military is not shown to violate any enabling statute or constitutional right. The court finds no merit to petitioner's argument under either the 1968 Instr. or AR 633–30 that Young would have been entitled to release from his sentence on his minimum release date. Instead, the term of his parole was set to be completed on the expiration of his full sentence, in accordance with prior practice and the 1988 version of the directive.

Petitioner's interpretations of Dir. 1325.4 and AR 633–30 are simply contrary to the agency's interpretations and application and are not required by the language of those regulations. The military's interpretations are entitled to deference, are consonant with federal penal practices, and are not shown to be contrary to any laws. Whether petitioner's good time credits were forfeited under the 1968 or 1988 version of Dir. 1325.4, Young was validly on parole at the time of his revocation, good time credits were properly forfeited, sentence credit was properly denied for most of the street time, and the calculation of the expiration of his sentence to be in 2001 is not shown to be erroneous. Petitioner's claim that his term expired in 1983 is without factual or legal merit.

In sum, the court has examined the 1968 Instr. and the 1988 version of the Directive as well as the other regulations relied upon by petitioner together with the military and civilian court cases cited by petitioner. The court finds that while the regulations are not without ambiguity, they do not require the result urged by petitioner and, instead, have been lawfully implemented by respondent. The court concludes that petitioner has not presented adequate facts or legal authority to show that he was entitled to be released on his minimum release date or that he is entitled to federal habeas corpus relief.

**IT IS THEREFORE BY THE COURT ORDERED** that this action is dismissed and all relief denied.

**IT IS SO ORDERED.**

Attachment

UNITED STATES ARMY COURT
OF CRIMINAL APPEALS

Before EDWARDS, GONZALES,
and CAIRNS Appellate
Military Judges

Inmate ERNEST B. JOHNSON, a person subject to the U.C.M.J. pursuant to Article 2(a)(7), United States Army, Petitioner

v.

ARMY CLEMENCY & PAROLE BOARD; COMMANDANT, U.S. DISCIPLINARY BARRACKS; and, the UNITED STATES OF AMERICA, Respondents

ARMY MISC 9701522

(ARMY 8700744)

For Petitioner: Not represented by counsel.

For Respondents: Colonel Joseph B. Ross, JA; Lieutenant Colonel Frederic L. Borch III, JA; Major Michael J. Klausner, JA; Captain Robert F. Resnick, JA (on brief); Captain Steven H. Levin, JA.

12 November 1997

MEMORANDUM OPINION ON PETITION FOR EXTRAORDINARY RELIEF IN THE NATURE OF A WRIT OF HABEAS CORPUS

CAIRNS, Judge.

In a Petition for Extraordinary Relief in the Nature of a Writ of Habeas Cor-

pus, petitioner asks this court to order respondents to release petition or from confinement and to "terminate his sentence." Petitioner asserts that a 1988 change to Department of Defense Directive 1325.4,[1] Treatment of Military Prisoners and Administration of Military Correction Facilities (May 19, 1988) [hereinafter DOD Dir. 1325.4], increased the duration of his parole beyond that which was permissible under the 1968 version of the directive, which was in effect in 1987 when the petitioner committed his offenses. As a result of the change in the directive/instruction, petitioner contends that the duration of his parole period was enlarged from his minimum to his maximum release date. Consequently, petitioner argues that his punishment has been increased in violation of the constitutional prohibition against *ex post facto* laws.[2]

Respondents argue that this court lacks jurisdiction because the petitioner's appeal under Article 66, Uniform Code of Military Justice [hereinafter UCMJ] is final. Since the All Writs Act[3] provides no independent jurisdictional basis, but only authorizes this court to consider extraordinary writs in aid of the court's statutory jurisdiction, respondents contend that we lack the necessary jurisdictional foundation to decide the merits of the petition. Respondents alternatively assert that if this court has jurisdiction over the subject matter, petitioner has not been subjected to any change in the rules governing the duration of parole; therefore, the government has not imposed any unconstitutional *ex post facto* law to the detriment of the petitioner. Assuming, without deciding, that this court has jurisdiction to decide the issues presented in the petition, we conclude that petitioner has not been subjected to an unconstitutional application of an *ex post facto* law.

## BACKGROUND

Because the petition comes before the court without a record of trial and without any stipulation of fact by the parties, the facts are not fully developed. Although we do not find any facts,[4] we will rely not only on matters of public record and applicable regulations, but also in part on petitioner's allegations, respondents' reply, and documentary evidence attached to their briefs for purposes of resolving this writ:

1. On 1 April 1987, petitioner was convicted on his pleas of guilty by general court-martial of conspiracy to escape from confinement, absence without authority, escape from confinement, wrongful use of cocaine and marijuana, wrongful distribution of cocaine, wrongful possession of cocaine, and robbery. His approved sentence included confinement for thirteen years and six months. The findings and sentence were affirmed by the Army Court of Military Review[5] on 25 March 1988. *United States v. Johnson*, 26 M.J. 509 (A.C.M.R.), *pet. denied*, 27 M.J. 286 (C.M.A.1988).

2. On 11 August 1992, petitioner was released on parole, with the term of parole extending until 18 June 2000, the petitioner's maximum release date, in accordance with the 1988 change, DOD Dir. 1325.4. [The maximum release date is defined as the day preceding the date determined by adding the full term of the sentence to the beginning date of the sentence. The "full term of the sentence" is defined as the entire sentence to confinement without deductions for abatement. Abatement includes good

1. Formerly, DOD Instruction 1325.4, Treatment of Military Prisoners and Administration of Military Correction Facilities (October 7, 1968) [hereinafter DOD Instr. 1325.4].

2. U.S. Const. Art. I, § 9, cl. 3.

3. 28 U.S.C. § 1651(a) (1992).

4. Our Article 66(c) factfinding authority is limited to our consideration of the record. Article 66(c), UCMJ; *United States v. Ginn*, —— M.J. —— (1997).

5. Prior to 1 October 1994, this court was named the Army Court of Military Review.

conduct time and extra good time earned. Army Reg. 633–30/Air Force Reg. 125–30, Apprehensions and Confinement: Military Sentences to Confinement, para. 2e (6 Nov. 1964) [hereinafter AR 633–30]].

3. Petitioner asserts that the term of his parole should have been until 6 July 1995, his minimum release date, in accordance with the 1968 version of DOD Dir. 1325.4. [The minimum release date is defined in AR 633–30 as the maximum release date reduced by the actual number of days of abatement. AR 633–30, para. 2f].

4. On 25 November 1996, seventeen months after his minimum release date, but forty-three months before his maximum release date, petitioner allegedly violated his parole. This alleged infraction provided the basis for the petitioner's return to the U.S. Disciplinary Barracks, Fort Leavenworth, Kansas, to serve the remainder of his sentence to confinement.[6]

5. Petitioner sent his request for extraordinary relief to the United States Court of Appeals for the Armed Forces. The clerk of that court returned the petition without docketing it, advising petitioner that Rule 4(b)(1), Rules of Practice and Procedure, United States Court of Appeals for the Armed Forces, requires that, absent good cause, a petition for extraordinary relief shall not be filed in that court "unless relief has first been sought in the appropriate Court of Criminal Appeals."[7]

## DISCUSSION

Article 66, UCMJ, establishes this court's appellate jurisdiction is set with respect to the findings and sentences on cases "in which the sentence, as approved, extends to death, dismissal of a commissioned officer, cadet, or midshipman, dishonorable or bad-conduct discharge, or confinement for one year or more." It is beyond debate that this court may exercise jurisdiction to issue extraordinary writs necessary in the aid of its jurisdiction. All Writs Act, 28 U.S.C. § 1651(a) (1992); R.C.M. 1203 discussion; *Dettinger v. United States*, 7 M.J. 216 (C.M.A.1979); *Kelly v. United States*, 1 M.J. 172 (C.M.A.1975); *Henderson v. Wondolowski*, 44 C.M.R. 117 (1971); *McKinney v. Jarvis*, 46 M.J. 870 (Army Ct.Crim.App.1997); *United States v. Draughon*, 42 C.M.R. 447 (A.C.M.R. 1970). The jurisdictional issue in this case is whether, after appellate review is final and the findings and sentence have been affirmed, this court loses its extraordinary writ jurisdiction over assertions that the affirmed sentence has been unconstitutionally increased by the application of an *ex post facto* regulatory provision which extends the duration of petitioner's parole. Since we conclude, as discussed below, that no change in the parole rules were applied to petitioner, we will save for another day the issue of jurisdiction.

Petitioner asserts that a change to the parole rules which was promulgated after he committed the offenses for which he was sentenced caused him to suffer greater punishment than he would have incurred under the rules in effect at the time of his offenses. The *ex post facto* prohibition of the U.S. Constitution forbids the retroactive application of any law that imposes or increases punishment for transgressions which were not so punishable under the law at the time the not was committed. *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). Even if the changed rule concerns parole—provisions accorded by the grace of

---

**6.** Although we are uncertain as to the exact date that petitioner's parole was revoked, the revocation occurred after his minimum release date, but before his maximum release date. Petitioner alleges that the 25 November 1996 infraction was the basis for the revocation of his parole. We note, however, that the Clemency and Parole Board cited seven violations on six separate dates, four of which occurred after his minimum release date.

**7.** *See also* Rule for Courts–Martial 1204(a) discussion [hereinafter R.C.M.].

the sovereign—it violates the *ex post facto* "clause if it is both retrospective and more onerous than the law in effect on the date of the offense." *Id.*

Petitioner claims that under DOD Instr. 1325.4, the term of duration of his parole should have expired on 6 July 1995, his minimum release date. Instead, the term of his parole was set to be completed on 18 June 2000, the expiration of his full sentence, in accordance with the 1988 version of the directive. According to petitioner, since the infraction which formed the basis for the revocation of his parole occurred after 6 July 1995 but before 18 June 2000, he was subjected to the application of an unconstitutional *ex post facto* rule.

The problem with petitioner's claim is that the 1968 instruction does not address the duration of parole. At the time of petitioner's offenses, however, Army Reg. 190–47, Military Police: The United States Army Correctional System, para. 12–27 (1 Oct. 1978) [hereinafter AR 190–47], addressed the duration of parole and provided that "if … the parolee complies with the conditions of parole, the parolee will be discharged from supervision when the full term of the sentence is completed." Not only is there no inconsistency between the instruction and the directive, the rule that should have been applied to petitioner, found in AR 190–47, is precisely the rule that in fact was applied to him under DOD Dir. 1325.4, para. 3.5.d. Petitioner was not, therefore, subjected to a retroactive law that caused more onerous punishment than authorized under the law at the time of his offenses. The constitutional prohibition against *ex post facto* laws was not violated.

Accordingly, the petitioner's request for relief in the nature of a writ of habeas corpus is DENIED.

Senior Judge EDWARDS and Judge GONZALES concur.