# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Eliud I. LOPEZ
### Machinery Technician Third Class (E-4), U.S. Coast Guard

### CGCMSP 25013
### Docket No. 1487

### 11 July 2024

Special court-martial sentence adjudged on 2 November 2022.

| | |
|---|---|
| Military Judge: | CDR Bryan D. Tiley, USCG |
| Appellate Defense Counsel: | LT Schuyler B. Millham, USCG (argued) |
| | LCDR Jennifer S. Saviano, USCG |
| Appellate Government Counsel: | LT Elizabeth M. Ulan, USCG |
| | LT Christopher J. Hamersky, USCG (argued) |

### BEFORE
### McCLELLAND, JUDGE & BRUBAKER
Appellate Military Judges

BRUBAKER, Judge:

A military judge sitting as a special court-martial convicted Appellant, contrary to his pleas, of two specifications of indecent recording, in violation of Article 120c, Uniform Code of Military Justice (UCMJ). The military judge sentenced Appellant to confinement for three months, reduction to E-1, and a bad-conduct discharge. The convening authority (CA) disapproved one month of confinement. Judgment was entered accordingly.

Appellant raises four assignments of error (AOEs):

I. The Government's failure to execute the CA's action reducing Appellant's period of confinement violated his Fifth Amendment right to due process.

II. The trial counsel committed prosecutorial misconduct by failing to communicate the convening authority's action to the confinement facility.

III.    The Deputy Judge Advocate General (DJAG) of the Coast Guard engaged in unlawful command influence by seeking to have the Coast Guard Investigative Service (CGIS) close its investigation into a formal Inspector General (IG) complaint about Appellant's illegal post-trial confinement, obstructing both Appellant and this Court from uncovering direct evidence about the trial counsel's misconduct, which has negatively affected the fair handling of this case.

IV.    This Court erred by denying Appellant's motion to compel production of direct statements and evidence relating to his illegal confinement, hindering his ability to identify and fully support claims of error before this Court.

We heard oral argument on AOEs I and III. We find merit in AOE I. This moots AOE II, which frames the same error in a different way. We address the remaining AOEs, but we find no further error and grant relief for illegal post-trial confinement.

**Background**

Appellant surreptitiously used his cell phone to record a shipmate getting into and out of a shower in a locker room. Using the same technique, Appellant surreptitiously recorded his roommate as he changed clothes in their shared barracks room.

After pleading guilty to these offenses, Appellant was adjudged a sentence that included three months of confinement. The CA, acting under Article 60a, UCMJ, approved only two months of confinement. The staff judge advocate (SJA) emailed the CA's action to the trial counsel and his supervisor, with a copy to the deputy SJA, noting that the CA had reduced confinement by one month and expressing his understanding that the trial counsel "will forward this to the military judge for final entry and get copies to [defense counsel], [special victims counsel], etc." Appellant's Mot. to Attach, App'x C at 1. Trial counsel, in turn, forwarded the CA's action to certain individuals, including the military judge, defense counsel, special victims counsel, support staff, and the court reporter.

The military judge entered judgment, correctly reflecting that the approved sentence included only two months of confinement. Trial counsel again forwarded the entry of judgment to certain individuals, including defense counsel. Although by regulation, the trial counsel was

2

responsible for doing so,[1] neither he nor anyone else notified the brig of the CA's action and entry of judgment reducing the adjudged period of confinement. As a result, accounting for credit for good behavior, Appellant was released on 17 January 2023 rather than what should have been 22 December 2022, for a total of 26 days of excess confinement.

## Analysis

There is no dispute that the Government's failure to inform the brig of the modified sentence resulted in Appellant being subjected to illegal post-trial confinement.[2] Whatever the reasons for this failure, it deprived Appellant of his liberty without due process of law in violation of the Fifth Amendment,[3] is entirely inexcusable, and "warrant[s] our sharpest criticism." *United States v. Hilt*, 18 M.J. 604, 604 (A.F.C.M.R. 1984).

But before turning to an appropriate remedy for this error, we must consider two issues Appellant raises, both related to a core contention that he is entitled to more information about *why* the trial counsel failed to inform the brig. First, he asserts that the DJAG committed unlawful command influence by recommending closure of an IG's inquiry into a complaint about the failure to timely release Appellant. Second, he posits that we erred by denying, in large measure, his motion to compel post-trial discovery and that more appellate fact-finding is necessary by granting broader discovery or, in the alternative, by ordering affidavits and/or a fact-finding hearing. We address each contention in turn.

### I. Unlawful Command Influence

After the deputy SJA discovered and informed others of Appellant's belated release, an anonymous complaint was filed with the Office of the Inspector General (OIG), Department of Homeland Security (DHS). Consistent with a memorandum of understanding, DHS OIG referred the complaint to the Coast Guard via CGIS. CGIS Special Agent JK received the complaint and, deeming it non-criminal, referred it to the DJAG as the appropriate authority "to investigate or

---

[1] *See* COMDTINST M5810.1H, *U.S. Coast Guard Military Justice Manual*, Chap. 21, para. D.3.
[2] The parties agree there was illegal confinement, but both calculate it was for 25 days. We conclude it was for 26 days. The miscalculation appears to be based on conflating *one month* of confinement with *30 days* of confinement. The two are not synonymous.
[3] U.S. Const. amend. V.

delegate further as necessary." Gov't Mot. to Attach, App'x (1) at 2. In an email, SA JK attached the complaint and said, "Respectfully request response to me directly regarding any action taken." Appellant's Mot. to Attach, App'x I at 2.

The following day, the DJAG replied, first providing the following summary: "Due to a misunderstanding of responsibilities, Trial Counsel failed to notify the confinement facility that the convening authority had granted clemency. This error was not realized until after MK3 Lopez was released from confinement." *Id*. at 1. He then provided a discussion section, further explaining what happened and actions taken, and concluded with, "Recommend that CGIS close this complaint." *Id*. at 2.

Appellant asserts that this—particularly the recommendation to close the complaint—constituted both actual and apparent unlawful command influence. We review a claim of unlawful influence de novo. *United States v. Barry*, 78 M.J. 70, 77 (C.A.A.F. 2018).

### 1. Actual unlawful influence

"Actual unlawful influence occurs when there is an improper manipulation of the criminal justice process that negatively affects the fair handling and/or disposition of a case." *Barry*, 78 M.J. at 77 (cleaned up) (quoting *United States v. Boyce*, 76 M.J. 242, 247 (C.A.A.F. 2017)). To prevail on an appellate claim of unlawful influence, the accused has the initial burden of establishing: "(1) facts, which if true, constitute unlawful influence; (2) unfairness in the court-martial proceedings (i.e., prejudice to the accused); and (3) that the unlawful influence caused that unfairness." *Barry*, 78 M.J. at 77 (citing *Boyce*, 76 M.J. at 248). "While Appellant's initial burden is low, it requires more than mere allegation or speculation. Instead, an appellant must show 'some evidence' in order to sufficiently raise the issue." *Barry*, 78 M.J. at 77 (cleaned up) (quoting *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013)).

"Once an appellant meets his initial burden of raising an issue of unlawful influence, the burden shifts to the government to rebut the allegation by persuading the Court beyond a reasonable doubt that: (1) the predicate facts do not exist; (2) the facts do not constitute unlawful influence; or (3) the unlawful influence did not affect the findings or sentence." *Id*.

The prohibition against unlawful influence is codified in Article 37, UCMJ. Its first two clauses prohibit certain actions by court-martial convening authorities or "any other commanding officer[s]." Art. 37(a)(1), (2), UCMJ. Appellant does not allege this type of unlawful influence. He instead asserts that the DJAG's actions violated Article 37(a)(3), which provides:

> No person subject to [the UCMJ] may attempt to coerce or, by any unauthorized means, attempt to influence the action of a court-martial or . . . any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority . . . with respect to such acts taken pursuant to this chapter as prescribed by the President.

Art. 37(a)(3), UCMJ.

Therefore, to meet his burden of establishing facts that, if true, constitute unlawful influence, he must make a threshold showing of the following components of Article 37(a)(3), UCMJ: (1) that a person subject to the UCMJ; (2) by unauthorized means; (3) attempted to influence the action of a convening, approving, or reviewing authority with respect to acts taken pursuant to the UCMJ. Article 37(a)(3), UCMJ.

### (1) *Person subject to the UCMJ*

In his pleadings, Appellant presented no evidence that the DJAG was a person subject to the UCMJ. He instead relied on *Barry*, 78 M.J. at 76, which held that a DJAG can commit unlawful influence under Article 37(a), UCMJ. True, but in *Barry*, the DJAG was an active duty servicemember. The court relied on the plain language of the phrase "person subject to [the UCMJ]" and Article 2(a)(1), UCMJ—which lists "[m]embers of a regular component of the armed forces" as persons subject to the UCMJ—to hold that an *active duty* DJAG, "just like any other military member, is capable of committing unlawful influence." *Barry*, 78 M.J. at 76.

The Coast Guard DJAG, in contrast, is a civilian employee, distinguishing this case from *Barry*. Appellate defense counsel, however, effectively addressed this during oral argument by noting that it is common knowledge that the DJAG is a retired military officer and requesting we take judicial notice of the fact. Because it is generally known locally and not subject to reasonable dispute, we take judicial notice under M.R.E. 201(b) that the DJAG is a retired

member of a regular component of the armed forces and thus subject to the UCMJ under Article 2(a)(4), UCMJ.

### (2) *Use of "unauthorized means"*

Appellant has not established, however, that the DJAG used "unauthorized means" in responding to the IG complaint. Effectively, the DJAG was tasked with inquiring into an administrative complaint made to DHS OIG and responding to SA JK, who was acting on behalf of higher headquarters (the Coast Guard and DHS OIG). Whether Appellant believes that the DJAG should have conducted a more formal, robust inquiry is irrelevant. He fails to show that the DJAG's actions of inquiring into the administrative complaint informally, responding with an email summation, and recommending it be closed were "unauthorized" within the meaning of Article 37(a)(3), UCMJ.

### (3) *Attempt to influence action of reviewing authority*

Appellant also fails to produce evidence that in responding to CGIS, DJAG was attempting to influence the action of this Court or any other convening, approving, or reviewing authority *with respect to acts taken pursuant to the UCMJ*. To the extent the DJAG was attempting to influencing anyone, it was the DHS OIG via CGIS. There is no evidence that by taking action requested of him in an administrative inquiry, the DJAG was attempting to influence the participants of this court-martial or that DJAG was deliberately trying to deprive this Court of information that might be relevant to the adjudication of this case.

We therefore conclude that Appellant has failed to establish facts that, if true, constitute unlawful influence. He also has not established that the DJAG's actions prejudiced Appellant, that is, caused his court-martial proceedings to be unfair. First, it is entirely speculative that had the DJAG not recommended closing the administrative inquiry, it would have continued and would have produced evidence impacting our assessment of the error at issue. Second, our assessment of error alleged in a court-martial is based on the court-martial record and, if that is insufficient, our own independent authority to order judicial fact-finding. *See* Art. 66(f)(3), UCMJ; *United States v. DuBay,* 17 C.M.A. 147, 37 C.M.R. 411 (1967)). If we believed that, contrary to a recommendation made in the course of an administrative inquiry, more information

was required to resolve appellate issues, we would order it. The DJAG's recommendation to close an administrative inquiry has no impact on our independent fact-finding authority.

Accordingly, we conclude that Appellant fails his burden to raise the issue of actual unlawful influence.

### *2. Apparent unlawful influence*

Military appellate courts have recognized that even when there is no showing of actual prejudice arising from unlawful influence, an accused may still be entitled to relief for the appearance of unlawful influence. *Boyce*, 76 M.J. at 248. Under this jurisprudence, it is sufficient for an accused to demonstrate: (1) facts that, if true, constitute unlawful command influence; and (2) that "this unlawful influence placed an 'intolerable strain' on the public's perception of the military justice system because 'an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding.' " *Id.* at 249 (quoting *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006)).

It remains an open question whether recent amendments to Article 37, UCMJ, supersede prior jurisprudence on apparent unlawful influence. *See* Art. 37(c), UCMJ (2019) ("No finding or sentence of a court-martial may be held incorrect on the ground of a violation of this section unless the violation materially prejudices the substantial rights of the accused."); *United States v. Gilmet*, 83 M.J. 398, 401, n.2 (C.A.A.F. 2023); *United States v. Gattis*, 81 M.J. 748, 754 (N-M. Ct. Crim. App. 2021). We need not, however, resolve this question here because, as we have already addressed, Appellant fails to make a showing of facts that, if true, constitute unlawful influence.

Furthermore, we conclude that even if there were unlawful influence, it did not place an intolerable strain on the public's perception of the military justice system. In an affidavit, SA JK attests that upon receiving the DJAG's response, he "found no reason to suspect criminal conduct, independently agreed with the conclusion, and determined that the matter had been adequately addressed." Gov't Mot to Attach, App'x (1) at 3. He therefore closed the case by summarizing the matter in a spreadsheet tracker monitored by DHS OIG. He states:

Ultimately, this matter was handled in the same manner as numerous other non-criminal complaints referred to CGIS by DHS OIG. The email received from DJAG is also consistent with how the legal program informs CGIS about the information obtained in response to a DHS OIG matter referred to the legal directorate for action. There were no cognizable aberrations in its handling.

*Id*.

An objective, disinterested observer who was fully informed of this, along with all facts and circumstances in this case, would not harbor a significant doubt about the fairness of the proceeding. Accordingly, even to the extent that apparent unlawful influence still exists under the amended Article 37, we conclude there was none in this case.

*II. Post-Trial Discovery and Fact-Finding*

Prior to submitting assignments of error, Appellant moved that this Court compel discovery of a long list of items, concluding that it "should result in the Government presenting all relevant statements, investigations, electronic communications, and records of telephonic and in-person communications regarding [Appellant's] unlawful confinement." Appellant's Mot. for Appellate Discovery at 8. The Government opposed. We granted the motion only so far as to order production of statements or evidence submitted to DHS OIG by Coast Guard or Department of the Navy personnel in response to the IG complaint. The Government provided only one responsive document—the previously discussed email from the DJAG.

Appellant asserts we erred by not granting the remainder of his motion. He asks, in essence, that we reconsider or, in the alternative, order further fact-finding into the cause of the Government's failure to timely release Appellant.

The opportunity to obtain discovery and production of witnesses and evidence is generally confined to the pre-trial stage. *See, e.g.,* Art. 46, UCMJ; R.C.M. 701, 703. On appeal, military courts rely primarily on the record of trial as defined in R.C.M. 1112. Military courts may, however, allow appellate discovery and fact-finding when they deem it necessary to develop facts not contained in the record about a collateral attack on a conviction or sentence,

such as unlawful command influence. *United States v. Campbell*, 57 M.J. 134, 138 (C.A.A.F. 2002).

An appellant seeking discovery of evidence or information outside of the record of trial has the "threshold burden of demonstrating that some measure of appellate inquiry is warranted." *Id.* To determine whether an appellant has met this burden, we consider, among other things:

> (1) whether the [appellant] has made a colorable showing that the evidence or information exists;
> (2) whether or not the evidence or information sought was previously discoverable with due diligence;
> (3) whether the putative information is relevant to appellant's asserted claim or defense; and
> (4) whether there is a reasonable probability that the result of the proceeding would have been different if the putative information had been disclosed.

*Id*.

If we determine that an appellant has met this burden and that some measure of appellate inquiry is warranted, we have discretion to determine what form that inquiry will take, which may include affidavits, interrogatories, or a fact-finding hearing pursuant to Article 66(f)(3), UCMJ and *DuBay,* 17 C.M.A. at 149, 37 C.M.R. at 413. "Such determinations are necessarily contextual and not generally conducive to a single solution." *Campbell*, 57 M.J. at 138.

Here, we conclude that Appellant has not met his threshold burden of demonstrating that appellate inquiry is required. The error and its prejudice to Appellant are already established: Appellant was illegally confined for 26 days because the trial counsel, whose job it was, failed to provide the convening authority's action and entry of judgment to the brig. Appellant nonetheless posits that production of the requested items is necessary because they *could* show that the Government acted with more than simple negligence—with bad faith or intentionally— and that if so, such evidence could be relevant to the relief we grant.

Under the circumstances, using our judicial authority to require compilation and production of a wide swath of communications between government actors and documents related to administrative inquiries, both actual and surmised, would be to sanction a fishing

expedition. There is not a scintilla of evidence of anything beyond negligence in failing to notify the brig. It is beyond speculative that a relatively junior officer wantonly or deliberately ignored a Flag Officer's action reducing the sentence. Had the trial counsel been acting in bad faith, it is unlikely he would have, on more than one occasion, informed trial defense counsel of the reduction in confinement.

Accordingly, Appellant fails to show a reasonable probability that the result of this proceeding would be different if the putative information was disclosed. We adhere to our prior decision only partially granting the request for appellate discovery and conclude that further appellate fact-finding is unwarranted.

*III. Remedy for Illegal Post-Trial Confinement*

Although the parties agree there was error for which relief should be granted, they differ on what the relief should be. Appellant requests that we set aside his bad-conduct discharge. He urges this is not only appropriate, but the only form of relief that would be meaningful. The Government requests instead that we set aside the reduction in pay grade and order payment of pay and allowances at the E-4 rate for the period of illegal confinement.

We agree with the Government's proposed relief. An appellant who has been subjected to illegal confinement is entitled to appropriate and meaningful relief, when available. *United States v. Zarbatany*, 70 M.J. 169, 176–77 (C.A.A.F. 2011) (addressing illegal pretrial confinement); *United States v. Collins*, 44 M.J. 830, 833 (A. Ct. Crim. App. 1996). Relief is not warranted or required, however, if it would be disproportionate to the harm suffered or the nature of the offense. *Id*.

Considering all the circumstances in this case, we conclude that setting aside the bad-conduct discharge would be disproportionate. First, although the harm suffered—26 days of illegal post-trial confinement—is undoubtedly significant, that does not automatically warrant setting aside a punitive discharge. Because confinement and a punitive discharge are "qualitatively different," setting aside a punitive discharge as a remedy for illegal confinement is reserved for rare cases. *United States v. Spaustat*, 57 M.J. 256, 263 (C.A.A.F. 2002) (holding that

17 days of illegal post-trial confinement does not warrant setting aside bad-conduct discharge) (quoting *United States v. Rosendahl,* 53 M.J. 344, 348 (C.A.A.F. 2000)); *United States v. Hammond*, 61 M.J. 676, 677 (A. Ct. Crim. App. 2005) (declining to set aside or upgrade dishonorable discharge as remedy for 30 days of illegal post-trial confinement); *Collins*, 44 M.J. at 833 (declining to set aside bad-conduct discharge as remedy for 22 days of illegal post-trial confinement: "Even error of [c]onstitutional dimension does not necessarily require disapproval of a punitive discharge when no other meaningful sentence relief is possible."); *see also Zarbatany*, 70 M.J. at 178 (Stucky, J., dissenting).

Second, similar to *Collins*, we conclude that the illegal confinement was "a result of negligent failure to recognize the effect of clemency on appellant's release date. The harm did not result from any bad faith or intentional desire to punish the appellant." *Collins*, 44 M.J. at 833. We recognize that Appellant desires more fact-finding before reaching such a conclusion. But as addressed earlier, there is simply no evidence of anything other than negligence, and any conclusion otherwise, in our view, strains credulity.

Finally, Appellant's offenses are serious. The impact of violating two shipmates' privacy by surreptitiously recording them undressing cannot be minimized.

Thus, even if Appellant is correct and there is no other meaningful relief, we decline to set aside the bad-conduct discharge. We believe, however, that there is other meaningful relief. Both parties assert that because Appellant was beyond his end-of-active-service date, setting aside confinement or reduction in pay grade would not automatically entitle him to financial remuneration. The Government, however, notes that there is precedent for Courts of Criminal Appeals declaring a period of post-trial confinement illegal and thus ordering pay and allowances for the period of illegal confinement. *United States v. Yanger*, 68 M.J. 540, 543 (C.G. Ct. Crim. App. 2009); *Hammond*, 61 M.J. at 679; *United States v. Sherman*, 56 M.J. 900, 902-03 (A.F. Ct. Crim. App. 2002). An affidavit from the Chief Counsel of the Coast Guard Pay and Personnel Center (PPC) attests that were this Court to do so here, the PPC would view it as valid and effectuate it. Based on this, we can be confident that our order would be carried out, that is, that it would be meaningful.

Still, we must be satisfied that such an order is within our scope of authority. Based on the precedent from this and two other Courts of Criminal Appeals, Article 66(d)(2), UCMJ (authorizing a Court of Criminal Appeals to "provide appropriate relief if the accused demonstrates error. . . ."), and Article 75, UCMJ (requiring restoration of "all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set aside or disapproved . . . ."), we conclude it is.

Accordingly, although we decline to set aside the bad-conduct discharge, we will order payment of pay and allowances for each day of illegal post-trial confinement.

### Decision

Only so much of the sentence as provides for confinement for two months and a bad-conduct discharge is approved. Appellant shall be paid 26 days of pay and allowances at the E-4 rate. We determine that the findings and sentence, as modified, are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as modified, are affirmed.

Chief Judge McCLELLAND and Judge JUDGE concur.



For the Court,

Sarah P. Valdes
Clerk of the Court