UNITED STATES, Appellee,

v.

**Raul J. SORIANO, Boatswain's Mate Second Class, U.S. Navy, Appellant.**

No. 45,415.

NMCM 82–0666.

U.S. Court of Military Appeals.

Sept. 16, 1985.

For Appellant: *Lieutenant Richard F. McManus, JAGC, USNR* (argued); *Lieutenant Commander William A. DeCicco, JAGC, USN* and *Lieutenant Louis F. Sadler, JAGC, USNR* (on brief).

For Appellee: *Lieutenant Brian D. Saunders, JAGC, USNR* (argued); *Captain W. J. Hughes, JAGC, USN* (on brief); *Commander Richard A. Monteith, JAGC, USN.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial composed of members and a military judge at the United States Naval Station, Subic Bay, Republic of the Philippines, during May and June 1981. Contrary to his pleas, he was found guilty of an unauthorized absence of 20 days and two specifications of perjury, in violation of Articles 86 and 131, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 931, respectively. He was sentenced to a bad-conduct discharge, confinement at hard labor for 1 year, total forfeitures, and reduction to the lowest enlisted pay grade. The convening authority approved the sentence as adjudged, and the United States Navy-Marine Corps Court of Military Review affirmed. 15 M.J. 633 (1982).

This Court granted review on the following issues:

I

WHETHER THE MILITARY JUDGE ERRED, TO THE PREJUDICE OF THE APPELLANT'S SUBSTANTIAL RIGHTS, BY REFUSING TO RECUSE HIMSELF.

II

WHETHER THE MILITARY JUDGE ERRED BY INSTRUCTING THE MEMBERS, OVER STRENUOUS DEFENSE OBJECTION, THAT A PUNITIVE DISCHARGE *MAY* AFFECT AN ACCUSED'S FUTURE WITH REGARD TO HIS LEGAL RIGHTS, ECONOMIC OPPORTUNITIES AND SOCIAL ACCEPTABILITY, VICE A PUNITIVE DISCHARGE WILL CLEARLY AFFECT AN ACCUSED'S FUTURE WITH REGARD TO HIS LEGAL RIGHTS, ECONOMIC OPPORTUNITIES AND SOCIAL ACCEPTABILITY.

We hold that the military judge did not err by refusing to recuse himself in this case and that any error in his sentencing instructions was harmless. Article 59(a),

UCMJ, 10 U.S.C. § 859(a). Accordingly, we affirm.

The charges involved here arose out of an earlier special court-martial tried by the same military judge without members.[1] The Court of Military Review found the following facts concerning the earlier court-martial:

> The record of trial reveals that the military judge was also the military judge who presided over the special court-martial from which the current charges originated. (R.49–50). At that special court-martial, the military judge, contrary to appellant's pleas and testimony, found him guilty of a violation of Article 121, UCMJ, 10 U.S.C. § 921, in the theft of six pistons and one air cooler, and sentenced appellant, *in absentia*, to confinement at hard labor for 4 months, to forfeit $275.00 pay per month for 4 months, and reduction to pay grade E–2. During that special court-martial, appellant, prior to the findings of the military judge, testified that he had no knowledge of the theft and manifested his innocence. Despite appellant's protestations of innocence, the military judge entered findings of guilty to the charge and specification.
>
> Subsequent to findings but prior to sentencing at the special court-martial, the defense requested to reopen its case and present additional evidence. This request was granted by the military judge. At this point, appellant took the stand and again testified on his own behalf. The military judge then heard appellant recant his prior testimony and admit that he had lied to the court while under oath. Appellant admitted knowledge of the theft but insisted that he had been working undercover for the Naval Investigative Service (NIS) and his participation in the theft was merely part of an NIS scheme to catch another individual. (Appellate Exhibit XVI). After the government presented evidence to rebut appellant's "second explanation," the military judge reaffirmed his original findings of guilty. Appellant's contradictory statements made at the special court-martial form the basis for both specifications under Charge II in the case *sub judice*.
>
> Charge I, and the single specification thereunder in the case *sub judice*, also had its origins in that prior special court-martial. While the military judge was deliberating on sentence, appellant voluntarily absented himself from naval authority; the military judge sentenced appellant *in absentia*. (R.120).

15 M.J. at 634–35.

## I

Appellant contends that, as a result of the foregoing participation, the military judge should have recused himself from these proceedings. Article 26(d), UCMJ, 10 U.S.C. § 826(d), provides that "[n]o person is eligible to act as a military judge in a case if he is the accuser or a witness for the prosecution or has acted as investigating officer or a counsel in the same case." Once established, these disqualifications are self-operating, imparting no discretion to the trial judge. *See United States v. Broy*, 15 U.S.C.M.A. 382, 383, 35 C.M.R. 354, 355 (1965). Additional automatic grounds of challenge for cause against a military judge are delineated in subsections 1 through 8 of paragraph 62*f* of the Manual for Courts-Martial, United States, 1969 (Revised edition). *See* para. 62*c*, Manual, *supra*. The initial question presented is whether the military judge's prior involvement with appellant *per se* requires the judge to recuse himself under the above provisions of military law. *See generally United States v. Lewis*, 6 M.J. 43, 45 (C.M.A.1978).

---

1. This trial judge replaced Judge Edward Hosken, who initially presided at appellant's previous special court-martial. He reconsidered an earlier ruling by Judge Hosken and permitted appellant to be represented by his father, Mr. Dominador L. Soriano, in addition to detailed military defense counsel. *See* Appellate Exhibit XVI; *see also Soriano v. Hosken*, 9 M.J. 221, 223 n. 4 (C.M.A.1980). A different military defense counsel represented appellant at this general court-martial.

■ These facts, separately or jointly considered, are not expressly denoted as grounds of challenge for cause against a military judge in these military-law provisions. The particularity employed by Congress and the President in delineating nonjudicial capacities which would automatically disqualify a military judge suggests that the omission of prior judicial exposure by itself was intentional. *See also* para. 62*f* (10), Manual, *supra*. Such a conclusion is consistent with holdings of this Court in *United States v. Head*, 2 M.J. 131 (C.M.A. 1977), and *United States v. Shackelford*, 2 M.J. 17, 20 (C.M.A.1976). In general accord with civilian precedent, we therefore hold that a military judge need not recuse himself solely on the basis of prior judicial exposure to an accused and his alleged criminal conduct. *See Slayton v. Commonwealth*, 185 Va. 371, 38 S.E.2d 485 (Va.1946); *Heflin v. State*, 88 Ga. 151, 14 S.E. 112 (Ga.1891); *see generally* Ratner, *Disqualification of Judges for Prior Judicial Actions*, 3 How. 228, 241–42 (1957).

■ However, a trial judge may recuse himself in such a case as a matter of discretion. *See* para. 62*f*(13), Manual, *supra*. Here, defense counsel focused on a particular ruling made by the judge at the earlier special court-martial of appellant. The record of trial states:

DC: In light of the motion that the defense has put forth in this case, the defense would challenge the military judge for cause.

MJ: On what basis?

DC: Your Honor, the motion asserts ineffective assistance of counsel in that the defense reopened the case in chief in order to put on the testimony of the accused and in [sic] which now forms the basis of these perjury charges. The defense would suggest that to preclude [sic] an appearance of fairness and impartiality in ruling on the defense mo-

tion, that the military judge excuse himself.

His objection to the trial judge's deciding the defense suppression motion was based on a perceived relationship between the judge's earlier ruling and the purported ineffective legal assistance provided appellant.

Paragraph 62*f*(13), Manual, *supra*, generally provides that a military judge may be challenged for cause on the grounds of "[a]ny other facts indicating that he should not sit as ... military judge in the interest of having the trial and subsequent proceedings free from substantial doubt as to legality, fairness, and impartiality." For such a discretionary challenge to be granted, not only must certain facts be established but also these facts must be shown to create a substantial doubt in the mind of reasonable persons with respect to the impartiality of the trial judge. *See United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982). If the challenging party does not meet these burdens, it is no abuse of discretion for the trial judge to deny the challenge for cause. Para. 62*h*(2), Manual, *supra*; *see United States v. Head, supra* at 134 (Perry, J., concurring).

Accordingly, we conclude there are no facts which create substantial doubt in the mind of reasonable persons as to the impartiality of the military judge in deciding the suppression motion. *See United States v. Broy, supra*.

■ Appellate defense counsel, expanding on trial defense counsel's challenge at trial, avers that the military judge should have recused himself on his own motion for additional but related reasons. *See generally United States v. Bradley*, 7 M.J. 332, 333–34 (C.M.A.1979). He first suggests that the trial judge formed and expressed definite opinions at the special court-martial concerning appellant's guilt as to the present offenses. Para. 62*f*(10), Manual, *supra*. This averment[2] was reject-

2. Appellate defense counsel asserts that the military judge declared in open court at the earlier special court-martial that appellant's testimony was a "fabrication." Assuming this comment

applied to appellant's initial testimony, it was no more than a restatement of his later admission on the stand that he had not earlier testified truthfully. Assuming it applied as well to his

ed by the Court of Military Review and we find no legal error in this determination. *See United States v. Garwood*, 20 M.J. 148, 151 (C.M.A.1985). In any event, the members, not the military judge, found appellant guilty at this court-martial. *See United States v. Bradley, supra* at 334. Second, counsel submits that the trial judge relied on his prior experience and knowledge gained at the special court-martial to decide motions at the later general court-martial. *See United States v. Conley*, 4 M.J. 327 (C.M.A.1978); *see generally* Note, *Disqualification of Judges for Bias in the Federal Courts*, 79 Harv.L.Rev. 1435, 1451–1452 (1966). This argument is simply not supported by the record of trial or by the fact that many of these motions were decided adversely to appellant. Finally, counsel avers that the military judge must be considered an accuser because appellant's perjury occurred and his unauthorized absence began in his court. *See* Articles 1(9) and 26(d), UCMJ, .10 U.S.C. §§ 801(9) and 826(d), respectively. A court-martial is not the personal feifdom of the trial judge but is a court established by Act of Congress. *See United States v. Shipp*, 203 U.S. 563, 574, 27 S.Ct. 165, 166, 51 L.Ed. 319 (1906). Absent a showing of a belief or posture to the contrary on the part of the military judge, such an argument is singularly unpersuasive. *Blankenburg v. Commonwealth*, 272 Mass. 25, 172 N.E. 209, 213 (1930). *Cf. In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *State v. Byington*, 114 Utah 388, 200 P.2d 723 (1948). *See generally* Orfield, *Recusation of Federal Judges*, 17 Buff.L.Rev. 799, 814–20 (1968).

## II

■ The second issue in this case concerns a sentencing instruction requested by trial counsel pertaining to the effects of a punitive discharge. The instruction stated:

later testimony, it does not constitute by itself prejudgment of the appellant's guilt of perjury within the meaning of Article 131, Uniform Code of Military Justice, 10 U.S.C. § 931, and

Now, the court is advised that a stigma of a punitive discharge is commonly recognized by our society as evidenced by limitations *which it may place* on employment opportunities and other advantages which are enjoyed by one who[se] discharge characterization indicates that he has served honorably. *A punitive discharge may affect an accused's future with regard to his legal rights, economic opportunities and social acceptability.* You are advised that a dishonorable discharge should be reserved for those who, in the discretion of the court, should be separated under conditions of dishonor after conviction of serious offenses of a civil or military nature warranting such severe punishment. The court is further advised that a person dishonorably discharged is denied all veterans' benefits administered by the Veterans Administration. You are also advised that a bad-conduct discharge may be imposed in this case. It also is a severe punishment, although less severe than a dishonorable discharge. It may be adjudged for one who, in the discretion of the court, warrants severe punishment for bad conduct. The court is further advised that a person who receives a bad conduct discharge imposed by a general court-martial is denied substantially all benefits administered by the Veterans Administration. The court is advised that it may adjudge reduction to the lowest enlisted grade, either alone or in connection with any other kind of punishment included in the maximum limit of authorized punishments.

(Emphasis added.) Appellant argues that such an instruction denigrated the severity and irradicable stigma of a punitive discharge so as to mislead the members in a manner prejudicial to his substantial rights. We find that certain parts of this instruction were erroneous but that such error was harmless in the present case. *See* Article 59(a).

paragraph 210, Manual for Courts-Martial, United States, 1969 (Revised edition). *See generally United States v. Cooper*, 8 M.J. 5 (C.M.A.1979).

The granted issue, which was phrased by appellate defense counsel, arose as a result of a request for special instructions by trial counsel. He told the military judge that he objected to the use of the standard instruction on the effect of a punitive discharge. Paragraph 8–4*a*(1) of Military Judges' Guide, D.A.Pam. 27–9 (May 1969), states:

a. *Punitive Discharges.*

(1) *General.*

The court is advised that the ineradicable stigma of a punitive discharge is commonly recognized by our society and the repugnance with which it is regarded is evidenced by the limitations which it places on employment opportunities and other advantages which are enjoyed by one whose discharge characterization indicates that he has served honorably. *A punitive discharge will clearly affect an accused's future with regard to his legal rights, economic opportunities, and social acceptability.*

(Emphasis added.) Trial counsel argued that in light of today's "extremely tolerant" society such instruction was not warranted but requested that it be altered to "may" affect an accused's future. Defense counsel opposed this request but the military judge, citing his own reading experience, granted trial counsel's request.

The thrust of trial counsel's argument was that some convicted servicemembers who receive a punitive discharge do not suffer the severe effects which are generally recognized as inuring to a punitive discharge. He referred generally to the experience of punitively discharged members of the Naval service. He also cited a law review article written in 1972 and published in 1978 entitled, Lance, *A Criminal Punitive Discharge—An Effective Punishment?* 79 Mil.L.Rev. 1 (1978). The trial judge further noted that the surveys he had read indicated that some states did not deny unemployment benefits or restrict employment rights on this basis. The trial

judge overruled defense counsel's objection that such an instruction was based on speculation, not evidence, and instructed the court as indicated above.

The first question is the propriety of trial counsel's objection to the proposed standard instruction. *See* para. 8–4(a)(1), D.A.Pam. 27–9, *supra.* This instruction addresses the effects of a punitive discharge in terms of a comparison with the advantages enjoyed by those who receive honorable discharges. Trial counsel, however, objected to this instruction on the ground that the negative impact of a punitive discharge among those who had received it differed in terms of severity. Regardless of the validity of this contention, this objection exceeded the apparent scope of the standard instruction.

The second question is whether the trial judge was justified in giving the special instruction requested by trial counsel. In *United States v. Slaton,* 6 M.J. 254, 255 (C.M.A.1979), this Court said that "[a] trial judge must tailor his instructions on sentencing to both the law and the evidence." Clearly, the instruction requested by trial counsel was irregular and not based on any evidence presented at this court-martial, either in general or as specifically relates to this appellant.[3] Moreover, unlike the standard instruction, it apparently conflicts with the long established view of this Court that Congress and the President intended this punishment to be severe and to be treated as severe by those who impose sentences at courts-martial. *See United States v. McNally,* 16 M.J. 32 (C.M.A.1983); *United States v. Dukes,* 5 M.J. 71 (C.M.A. 1978); *United States v. Weatherford,* 19 U.S.C.M.A. 424, 425–26, 42 C.M.R. 26, 27–28 (1970); *United States v. Wheeler,* 17 U.S.C.M.A. 274, 38 C.M.R. 72 (1967); *United States v. Kelley,* 5 U.S.C.M.A. 259, 17 C.M.R. 259 (1954). Notwithstanding any

---

**3.** The above cited law review article states that the conclusions reached in this article are only tentative, and the project as a whole does no more than indicate lines along which more formal research efforts should proceed in the

future. The data presented are not intended to be used to "prove" the conclusions suggested, as evidence in a court-martial or in any other similar context.
79 Mil.L.Rev. 1, 4 (1978).

dicta in *United States v. Ford*, 12 M.J. 636, 638 (N.M.C.M.R. 1981), *pet. denied*, 13 M.J. 115 (1982), to the contrary, we adhere to this position again today. *See Hearings on H.R. 2498 Before a Subcommittee of House Armed Services Committee*, 81st Cong., 1st Sess. 649 (subpara. 3), *reprinted in Index and Legislative History, Uniform Code of Military Justice* (1949).

The final question is whether this erroneous instruction should be deemed harmless error under Article 59(a). Appellate defense counsel implies that this error was *per se* prejudicial or that prejudice was so plain that no additional comment is warranted. We disagree. *See United States v. Wheeler, supra* at 278, 38 C.M.R. at 76. Moreover, for several reasons, we find no prejudice. First, the instruction as a whole clearly conveys the message to the members that the punitive discharge is a severe punishment. *See United States v. Turner*, 14 U.S.C.M.A. 435, 438, 34 C.M.R. 215, 218 (1964). Second, the offenses for which appellant was convicted were serious and several in number. Third, appellant's prior conviction at a special court-martial was properly before the members as a matter of aggravation. Fourth, neither appellant nor his counsel made any effort to communicate to the members even the suggestion of the inappropriateness of a punitive discharge in this case.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge FLETCHER did not participate.