IN THE CASE OF

UNITED STATES, Appellee

v.

Maurice RUSH, Private
U.S. Army, Appellant

No. 00-0096

Crim. App. No. 9701687

United States Court of Appeals for the Armed Forces

Argued October 3, 2000

Decided January 26, 2001

SULLIVAN, J., delivered the opinion of the Court, in which GIERKE
and BAKER, JJ., joined.  EFFRON, J., filed an opinion concurring
in part and dissenting in part.  CRAWFORD, C.J., filed an opinion
concurring in the result.

Counsel

For Appellant:  Captain Steven P. Haight (argued); Colonel Adele H. Odegard,
    Major Jonathan F. Potter, and Captain David S. Hurt (on brief);
    Lieutenant Colonel David A. Mayfield and Major Scott R. Morris.


For Appellee:  Captain Mary E. Braisted (argued); Major Bryan T. Boyles (on
    brief); Lieutenant Colonel Edith M. Rob and Captain Katherine M. Kane.


Military Judge:  Richard J. Hough

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION.

Judge SULLIVAN delivered the opinion of the Court.

During the fall of 1997, appellant was tried by a special court-martial composed of officer and enlisted members at Fort Sill, Oklahoma.  Contrary to his pleas, he was found guilty of breaching the peace, two specifications of assault with a dangerous weapon, a knife, on different soldiers, and wrongfully communicating a threat, in violation of Articles 116, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 916, 928, and 934, respectively.  On October 17, 1997, he was sentenced to a bad-conduct discharge, confinement for 6 months, forfeiture of $600.00 pay per month for 3 months, and reduction to pay grade E-1.  On February 5, 1998, the convening authority approved this sentence, and on September 16, 1999, the Court of Criminal Appeals affirmed.  51 MJ 605.

On April 12, 2000, this Court granted review on the following issue:

> WHETHER THE ARMY COURT OF CRIMINAL APPEALS
> ERRED TO THE SUBSTANTIAL PREJUDICE OF
> APPELLANT BY FINDING NO PREJUDICE DESPITE
> FINDING THE MILITARY JUDGE ERRED BY
> REFUSING TO GIVE A PRESENTENCING
> INSTRUCTION REGARDING THE INERADICABLE
> STIGMA OF A PUNITIVE DISCHARGE.

We hold that the military judge erred in refusing to give a defense-requested standard instruction on the "ineradicable stigma" of a punitive discharge without explaining the basis of his decision on the record.  See RCM 1005(c), Manual for Courts-

2

Martial, United States (1995 ed.). * Such error, however, was

harmless in this case. See United States v. Soriano, 20 MJ 337

(CMA 1985).


The facts in this case which pertain to the granted issue are

not disputed. The appellate court below summarized them as

follows:

> The appellant was convicted of incidents
> involving two fellow servicemembers.
> First, the appellant pointed a knife at a
> soldier and lunged at him after the
> soldier followed him outside a building to
> smooth over a previous brief, minor,
> contentious discussion. Later, he
> threatened to injure this same soldier in
> retaliation for the soldier's reporting
> the aggravated assault. Second, in an
> unrelated incident, the appellant attacked
> a United States Marine Corps trainee,
> first with his fists, then with a knife,
> apparently because the appellant was
> offended by the trainee's stare. That
> aggravated assault resulted in a knife
> wound to the trainee's temple.
>
> During two brief Article 39(a), UCMJ,
> sessions held prior to presentation of
> sentencing evidence, the military judge
> discussed sentencing instructions, but
> only to inquire whether the defense
> counsel desired the instruction explaining
> unsworn statements. The record contains
> no other indication of any in-court or
> out-of-court session concerning sentencing
> instructions.
>
> During his sentencing instructions, the
> military judge read the standard bad-
> conduct discharge instruction:
>
> > A bad-conduct discharge. You are
> > instructed that a bad-conduct

---

* The current version of this rule is identical to the one in
effect at the time of trial.

> discharge deprives a soldier of virtually all benefits administered by the Veterans' Administration and the Army establishment. A bad-conduct discharge is a severe punishment, and may be adjudged for one who, in the discretion of the court, warrants more severe punishment for bad conduct, even though the bad conduct may not constitute commission of serious offenses of a military or civil nature. In this case, if you determine to adjudge a punitive discharge, you may sentence Private Rush to a bad-conduct discharge; no other type of discharge may be ordered in this case.

See Dep't of Army, Pam. 27-9, Military Judges' Benchbook 70 (30 Sep. 1996) (currently unchanged at 70.1, Change 1, 30 Jan. 1998) [hereinafter Benchbook]. He did not read any portion of the standard ineradicable stigma instruction.[1] After instructions, the military judge asked whether either counsel wanted additional instructions or objected to those given. The defense counsel replied, "Defense would request the ineradicable stigma instruction, Your Honor." The military judge answered, "I'm not going to give that instruction, Captain []." He offered no explanation.

_____
[1] Benchbook at 69:

> You are advised that the ineradicable stigma of a punitive discharge is commonly recognized by our society. A punitive discharge will place limitations on employment opportunities and will deny the accused other advantages which are enjoyed by one whose discharge characterization indicates that (he)(she) has served honorably. A punitive discharge will affect an accused's future with regard to (his)(her) legal rights, economic opportunities, and social acceptability.

51 MJ at 606-07.

The Court of Criminal Appeals, after a lengthy historical analysis of the ineradicable stigma instruction, held that under the circumstances of the particular case, the military judge's action was arbitrary, clearly unreasonable, and constituted an abuse of discretion because he inexplicably refused to give the standard sentencing instruction after a timely request without stating any reason for his decision to deviate from the Benchbook.  Id. at 610.  Nevertheless, it concluded that in light of certain factors delineated in United States v. Soriano, supra, the omission of the instruction did not prejudice appellant as to his sentence.


—— —— ——


Our starting point in resolving the granted issue is the opinion of the Court of Criminal Appeals.  It exhaustively explored the origins of the standard instruction provided in the Military Judges' Benchbook on the ineradicable stigma of a punitive discharge.  It said in pertinent part:


> Because the standard Benchbook
> instructions are based on a careful
> analysis of current case law and statute,
> an individual military judge should not
> deviate significantly from these
> instructions without explaining his or her
> reasons on the record.  It is possible
> that this military judge harbored the
> belief that a punitive discharge no longer
> carried a stigma, or that the economic
> consequences of a discharge were not
> relevant to the members' sentencing

> decision, or that the instruction was not appropriate in this appellant's case. We cannot divine his reasons from a blank record. Under the circumstances of this case, because the military judge inexplicably refused to give the standard sentencing instruction after a timely request without stating any reason for his decision to deviate from the Benchbook, we find his action to be arbitrary and clearly unreasonable, and thus an abuse of discretion.

51 MJ at 609-10 (footnotes omitted).

We share the lower appellate court's concern that military members be properly instructed as to the severe nature of a punitive discharge. See United States v. Soriano, 20 MJ at 337. We also agree with the lower appellate court that the military judge has a duty to explain why he is refusing to give a standard instruction requested by the defense. See RCM 1005(c) ("The military judge shall inform the parties of the proposed action on such requests before their closing arguments on sentence."); see also United States v. Neal, 17 USCMA 363, 365, 38 CMR 161, 163 (1968). In our view, meaningful appellate review of the trial judge's decision on this important sentencing matter requires that he articulate his reason for his decision. See United States v. Smith, 50 MJ 451, 455 (1999).

The remaining question before us is whether the failure of the trial judge to give the defense requested standard instruction without explanation was harmless error. There was no constitutional error here, but rather a violation of a Manual provision promulgated by the President to ensure a military

accused a fair trial.  See RCM 1005(c).  In this context, we must decide whether this objected to error substantially influenced the sentence proceedings such that it led to a bad-conduct discharge being unfairly imposed in this case.  See Art. 59(a), UCMJ, 10 USC § 859(a).  We conclude that it did not.

As noted above, the instructions actually given in this case did expressly state to the members that "a bad-conduct discharge is a severe punishment." (R. 436).  See United States v. Soriano, supra at 343.  Second, three of the four offenses for which appellant was found guilty were aggravated in nature and individually authorized a punitive discharge.  See paras. 110(e) and 54(e)(8), Part IV, Manual, supra.  Third, defense counsel conceded to the members that appellant would be otherwise stigmatized, lose benefits, and have his military career terminated by reason of his felony convictions. (R. 431-32).  Finally, this case was tried before experienced members (e.g., two colonels, two lieutenant colonels, and three command sergeant majors) who could reasonably be expected to appreciate the severity of this punishment on their own.  In these circumstances, as in Soriano, supra, we find no prejudice and affirm.

The decision of the United States Army Court of Criminal Appeals is affirmed.

EFFRON, Judge (concurring in part and dissenting in part):

I agree with the lead opinion's conclusion that the military judge erred by not giving the requested instruction on the ineradicable stigma of a bad-conduct discharge. The instruction echoes the special attention of Congress to the stigma of a bad-conduct discharge, which is reflected in those portions of the UCMJ providing that a bad-conduct discharge may be imposed only when the accused has been provided with detailed defense counsel, a verbatim record has been prepared, a military judge has presided at trial (unless precluded by physical conditions or military exigencies), and judicial review has been conducted (unless waived or withdrawn). See Arts. 19, 66(b)(1), and 71(c), UCMJ, 10 USC §§ 819, 866(b)(1), and 871(c), respectively. It is noteworthy that Congress, by contrast, has authorized the imposition of confinement for up to 6 months without any of these protections. See id. Special attention to the stigma of a bad-conduct discharge is not simply a vestigial item from an earlier era, but reflects recent congressional attention to these issues. See National Defense Authorization Act for Fiscal Year 2000, Pub. L. No. 106-65, § 577(a), 113 Stat. 512, 625 (1999).

I disagree with that portion of the lead opinion finding that appellant was not prejudiced by the military judge's

refusal to give this required instruction -- a standard instruction that was specifically requested by appellant.  The lead opinion finds the error to be harmless based upon the nature of the offenses, the general references by the military judge and defense counsel to the seriousness of a bad-conduct discharge, and the likely knowledge of the panel members.  Although these factors might have rendered the error non-prejudicial if the case involved a general court-martial involving a lengthy sentence, this was not such a case.

The best measure of the nature of this case comes from the decision of the convening authority to refer it to a special, rather than a general, court-martial.  In that context -- a case the command itself viewed as relatively minor -- it was particularly important that the military judge use the standard instruction to direct the attention of the members beyond generalized concerns about a bad-conduct discharge.  The standard instruction would have required them to focus on the permanent stigma -- the ineradicable stain -- of a bad-conduct discharge.  Under the circumstances of this case, the refusal of the military judge to give the standard instruction was prejudicial to the substantial rights of appellant. See Art. 59(a), UCMJ, 10 USC § 859(a).  I would reverse and remand for a new sentencing proceeding.

United States v. Rush, No. 00-0096/AR

CRAWFORD, Chief Judge (concurring in the result):

RCM 1005(e), Manual for Courts-Martial, United States (2000 ed.), requires certain instructions. Nowhere at the time of appellant's trial did that rule require an instruction to the effect that a punitive discharge creates "an ineradicable stigma."[1] The same holds true today. In particular, RCM 1005(e)(2) requires members to be instructed that any sentence involving a punitive discharge and confinement, or confinement in excess of 6 months, will have an effect on a servicemember's entitlement to pay and allowances.[2] If the President had intended that members be instructed that punitive discharges carried a stigma of some type, he would have added it in this section.

In my view, the Court of Criminal Appeals erred when it rejected the contention that the ineradicable stigma

_____

[1] The instruction which defense counsel sought, but was refused by the military judge, is:

> You are advised that the ineradicable stigma of a punitive discharge is commonly recognized by our society. A punitive discharge will place limitations on employment opportunities and will deny the accused other advantages which are enjoyed by one whose discharged characterization indicates that (he) (she) has served honorably. A punitive discharge will affect an accused's future with regard to (his)(her) legal rights, economic opportunities, and social acceptability.

See Military Judges' Benchbook at 70 (Dept. of the Army Pamphlet 27-9 (30 Sept. 1996)).

[2] This provision was not even in effect at the time of appellant's trial.

instruction was optional.  A Department of the Army
Pamphlet, albeit a widely respected, constantly used and
up-to-date Military Judges' Benchbook, published by the
Secretary of the Army, does not take precedence over a Rule
for Court-Martial promulgated by the President.

United States v. Soriano, 20 MJ 337 (CMA 1985), held
that a punitive discharge was a severe punishment and court
members were to be instructed accordingly.  I completely
agree.  The court members in this case were properly
instructed.[3]

The ineradicable stigma instruction found in the
Military Judges' Benchbook addresses the effect of a
punitive discharge on one individual (the accused at trial)
vis-a`-vis all of the servicemembers who do not receive a
punitive discharge.  It is one thing to instruct court
members that a punitive discharge is severe punishment.  It
is quite another thing to tell court members that an

---

[3] The military judge instructed the members as follows:

> You are instructed that a bad-conduct discharge
> deprives a soldier of virtually all benefits
> administered by the Veterans' Administration and
> the Army establishment.  A bad-conduct discharge
> is a severe punishment, and may be adjudged for
> one who, in the discretion of the court, warrants
> more severe punishment for bad conduct, even though
> the bad conduct may not constitute commission of
> serious offenses of a military or civil nature.
> In this case, if you determine to adjudge a
> punitive discharge, you may sentence Private Rush
> to a bad-conduct discharge; no other type of
> discharge may be ordered in this case.

2

adjudged punitive discharge may have an ineradicable stigma when such may not be the case at all.

This court has frequently emphasized the importance of giving members appropriate instructions. See, e.g., United States v. Greaves, 46 MJ 133 (1997). Instructions that are appropriate must be tailored to the facts of each case and may reflect perceptions as well as developments in social and labor trends. See United States v. Tualla, 52 MJ 228, 233 (2000) (Crawford, C.J., concurring).

Even today, the majority does not hold that the ineradicable stigma instruction is required. They find that the military judge erred by not explaining why he was refusing to give the instruction. While an explanation from the military judge may have been helpful to both the lower court and this Court in reviewing this case, an explanation was not required because the ineradicable stigma instruction, albeit a "standard one," was not required by RCM 1005(e) or the law of this Court. The onus was on trial defense counsel to justify why such an instruction was appropriate under the facts of this case. As I have said previously, "The forum for initiating a new or different application of facts to existing law is the trial court. The bellwether to bring changed conditions to the forefront should be either the trial or defense

3

United States v. Rush, No. 00-0096/AR

counsel." Id. at 232.  Reliance on a 1978 law review

article[4] to determine what, if any, stigma is attached to a

punitive discharge is no longer justified.

---

[4] Charles E. Lance, A Criminal Punitive Discharge - An Effective
Punishment?, 79 Mil.L.Rev. 1 (1978).

4